The sole remaining issue and dispute in this case is whether subsection A of Maryland 4th degree burglary, which is criminal trespass of the dwelling, qualifies as a crime of violence under the residual clause of section 2K2.1. It does not. Your Honor, the Maryland trespass provision, which doesn't have an intent to commit a crime inside the dwelling, which is the least serious of the four degrees of Maryland burglary, which is even referred to in Maryland as a misdemeanor, does not qualify. It's a felony, right? It is under, it is, yes, Your Honor, you're right, it is under the federal law, but I just wanted to sort of indicate, give you a flavor that this, because it's the least serious There's an intent to break and enter a dwelling, right? Pardon me? There may not be a specific intent to commit a crime in the dwelling, but there is a specific intent to commit the breaking and entering of a dwelling. Yes, it does have that, Your Honor, and I will get to that, too, about whether or not it meets the Big A purposeful elements, but first I just wanted to set out the four elements that must be met under Big A versus United States. It's not just sufficient that a prior offense presents a serious risk of physical injury. Instead, in addition, it also has to be similar in kind to generic burglary of the dwelling, which is unlawful entry into a building that's a dwelling with an intent to commit a crime. So specifically, Big A's four independent requirements must be met. First, the prior offense must have a risk of injury that's at a similar level to generic burglary of a dwelling. Second, by its elements, the prior offense must be purposeful. Third, it must be violent. And fourth, it must be aggressive. And I'll go through all of these, Your Honor. First, I'll start with the comparative risk of injury. The Maryland Trespass Provision does not present a risk of injury that is at a similar level to generic burglary of a dwelling, specifically because it's missing that second intent, the intent to commit a crime. For the homeowner who confronts somebody coming into his house, I suggest that's a distinction that he's not going to worry about. Well, Your Honor, I do agree that obviously it does present a risk of confrontation. There's always going to be a risk of confrontation if it's a stranger that comes into a house. But for various reasons, Your Honor, that I'll go through, it doesn't present the same type of injury or same risk if there was the intent to commit a crime inside the dwelling. Because if somebody's going to come in with an intent to commit a crime, as the court said in Taylor, that offender, that perpetrator is more likely going to be prepared to use violence or is more likely going to possess. The burglars are cowards. That's why they're sneaking around trying to get in somebody's house without them seeing. They're cowards. I'm not sure I would accept that because they come in to commit a crime, that substantially increases the risk. Well, Your Honor, I think one thing that's really important, too, is that the Maryland trespass provision is very broad, and it can be even accomplished by somebody who's not a stranger, by somebody who's a family member or a friend. But you think we ought to look at it from the perspective of the defendant and not the perspective of the homeowner in assessing the risk? Well, Your Honor, I think you can look at it at both. If you have an individual who the occupant is familiar with, such as an ex-boyfriend or an ex-girlfriend, whose unlawfully trespassing may still have the key in order to pick up his or her things or in order to try to make up, obviously that presents a lot less risk of confrontation, even from the perspective of the occupant. I mean, sure, the person may not be happy that this family member who's not welcome in the home is coming into the home where the ex-boyfriend or the ex-girlfriend tried to make up, but it's not likely that they're going to shoot the person because of it. I had a friend who was a lawyer, and he and his wife woke up in the middle of the night, and there was a guy standing in their bedroom in the middle of the night. He was just drunk. He thought he was at his house. That's how drunk he was. Do you think that that risk, that homeowner, when he looks up and sees a man standing in his bedroom, even if he's just there by accident and drunk, is faced with any less risk in his mind as to the danger he's facing? Well, in his mind it may not be the case, but I guess if we had a situation where the defendant had a gun, Your Honor, obviously that presents a much more charged situation, much more likely. But, again, I wanted to repeat that in Maryland, and there are some cases, it encompasses conduct. It's not unusual for the trespass to occur where the occupant is familiar with the individual. For example, in Bain v. State, that's a Maryland Court of Special Appeals decision. It's 533 Atlantic 2nd 309, and the issue there was the admissibility of a prior trespass of conviction where the burglar was a brother who unlawfully entered into his sister's home, possibly to pick up his things. That's very different from the example that you gave me, Your Honor. You want us to look at the most innocuous set of facts, but we're dealing with the crime of violence section of the statute, which simply asks whether or not the conduct presents a serious potential risk of injury. So why do we need to look at those, admittedly, perhaps innocuous set of circumstances? The only question is, in the normal mind run of cases, does this present a serious risk of harm? Well, you're absolutely right, Your Honor. This is the residual cost, so we are looking at the ordinary case. But I don't think it can be said, and it's the government's burden of proof, that the ordinary case is the stranger who comes into the house, particularly because we have Maryland cases, one of which is Bain v. State, another one is Bass v. State, where the trespass was with somebody who is... We should do the modified categorical review like Shepard and look behind the nature of the burglary or the breaking and airing of a dwelling, as you're suggesting, instead of looking at James and Sykes, who say, look at whether there is this risk of serious harm? No, Your Honor, I'm absolutely not saying that. What you have to figure out is what is the ordinary case of trespass. And then we have to look at, after you figure out what is the typical case,  why does it matter whether somebody comes in to steal or somebody comes in to disrupt the orderliness of the room? Why does that matter? Why does that make a difference when, in fact, the intent is to break and air a dwelling? Well, Your Honor, I think the Supreme Court in Taylor recognized that what makes generic burglary of a dwelling, and that's what we have to compare it to, the court specifically recognized that what makes it so dangerous is that the perpetrator is coming in with the intent. That means he's prepared to use violence in order to confront, in order to respond and carry out the crime or in order to escape if he's happened to be caught in the act. Well, why doesn't James control this, though? There you have an attempted burglary statute in court, and looking at it carefully, identified that statute as being included in a violent crime. Well, Your Honor, in James, it was a very different type of statute because it was an attempt to break and enter with an intent to commit the crime. So that's the same shared intent that generic burglary of a dwelling has. So it was much closer to generic burglary of a dwelling. And whether or not the crime was complete, once the offender comes to the property with that intent, then he's going to be prepared to use violence or more likely to have a weapon, which is more likely to create a reaction from the occupant. But, Your Honor, I'll move on to the additional requirements that are required under BEGAY. It's not enough that there's a comparative risk, that there's a similar risk of injury. Under BEGAY, and as this court recently said in United States v. Carthorne and previously in United States v. Thornton, the prior offense must also be purposeful, violent, and aggressive. And those are three independent things. And let me start with violent. In United States v. Herrick, which is a First Circuit case, the court, looking to the dictionary definition, defined violent. And this has to be additional to the comparative risk. They defined violent as being marked by extreme force or sudden intense activity. And the Fourth Circuit approvingly cited to this in United States v. Thornton. Even with this definition, recently in United States v. Carthorne, this court found that assault and battery on a police officer is not violent. Assault and battery on a police officer is not violent under the residual clause. Now, that's where you have an individual directly confronting a police officer. Somebody's looking for a confrontation. Where, you know, a trespasser may not even confront somebody, may not run into somebody. And the court said that was not violent. Wasn't it because assault involved unlawful touching that the law itself required a minimal amount? It did, Your Honor, but there's always a risk there of escalation. But even if it involves an unwanted touching, you're touching a police officer who may be armed. And so, Your Honor, I think that that case, there is much more of a risk than in a mere trespass case. But beyond that, Your Honor, also, be gay has a purposeful requirement. Now, of course, as Your Honor pointed out, there is some type of intentional aspect here because you have to knowingly enter into the apartment. But be gay really requires... Distinguish that in a driving while intoxicated in be gay versus this. But Your Honor, I think be gay is helpful here because in be gay there are also intentional acts. There's the intentional act of driving. There's the intentional act of getting behind the wheel. And they looked at those and they said it didn't rise to the level of a crime of violence, right? Yeah, even though, yeah, it had those... Breaking into a dwelling intentionally. Well, but Your Honor, I think the point was that in be gay there was no specific intent to harm. The intender didn't, he didn't intend, the perpetrator didn't intend the consequences of his acts. And so we have the same thing here. Don't you think Sykes limited be gay or made clear that be gay only applied to strict liability, negligence, and reckless? Your Honor, I don't believe that it limited be gay. I think what Sykes said is that in most cases where you have a risk of injury that is similar in kind to the enumerated offense, that it's often going to be the case that it's also purposeful, violent, and aggressive. But it didn't say that that's never going to be the case. And in fact, in Carthorne, which came after Sykes, Your Honor, this court indicated that in addition to the comparative risk of injury analysis, the offense also has to be purposeful, violent, and aggressive. And so in Carthorne, the court suggested that the additional reason why the assault on the police officer didn't qualify is because it didn't meet that purposeful, violent, and aggressive, specifically the violent element. So it's still very relevant, Your Honor. And there's a case that I wanted to point the court to, and I neglected to cite it, but it's Brown v. Carraway. And it's a Seventh Circuit case after Sykes. It's 719F3583. In that case, the Seventh Circuit found that third-degree Delaware arson was not purposeful, even though the offense required the person to intentionally start a fire because he didn't have the intent to burn down the building. Now, if we have arson, the Seventh Circuit is saying, is not purposeful under Begay or Sykes, then I don't know how trespass is, Your Honor. And in fact, the Maryland Court of Special Appeals in State v. Bain even said, since misdemeanor breaking and entering involves no felonious or larcenous intent, it is a crime of general intent that includes within its scope a variety of acts, including some that are reckless and negligent. The Maryland Court has said that. And as the Seventh Circuit put it in a case, United States v. Templeton, 543F3378, generic burglary, the reason it's purposeful is because it requires both the intent to enter a building and the intent to commit a crime once inside. This second intent is what makes burglary purposeful. We're missing this second intent in Maryland trespass. So, Your Honor, and also cited to a series of cases in my brief where the Ninth Circuit, the Seventh Circuit, they found that offenses such as firing a gun, which is intentional, or involuntary manslaughter, which there's some type of conscious disregard, vehicular manslaughter, courts have found those are not purposeful under Begay. So how can trespass be purposeful under Begay if those cases, which are much more serious, much more purposeful, than what we're talking about here, don't qualify? So, Your Honor, if you don't have any more questions, then I'll save my time for the rebuttal. Okay. Thank you, Mr. Patil. Thank you. Mr. Nitze, did I say that right? It's Nitza, Your Honor. Nitza. Nitza's wife. All right. Well, we're glad to have you here, and you can begin whenever you're ready. Good morning, Your Honor. May it please the Court. There is a thread that runs through the burglary jurisprudence as it relates to enhancements under the Sentencing Guidelines and the Armed Career Criminal Act. It's a thread that runs from the Supreme Court's opinion in Taylor in 1990 all the way through the various cases that interpret Taylor from the circuits, 16 of which were cited in James, and then which runs through the James opinion, and then on through the various circuit court opinions which interpret James. And that thread is remarkably consistent. What the conclusion is from all of those cases is that to the extent that burglary presents a substantial risk of physical injury, which of course it does, that risk is occasioned by the risk of confrontation. It is the confrontation between the offender who breaks and enters the dwelling and the occupant of the dwelling or, in a small minority of cases, a third party, that gives rise to that risk of physical confrontation. Opposing counsel would have this Court believe that rather than step into line with or build off of that remarkably consistent body of case law, that this Court should instead focus on the fact that Maryland fourth-degree burglary lacks an element of intent. It's the position of my office that the intent element is entirely irrelevant to the quantum of risk that's associated with a violation in the ordinary case of Maryland fourth-degree burglary. What do we do with the Begay decision which talks about the purposeful, violent, aggressive conduct being necessary? Sure. Well, Judge O'Grady, the last word of this Court on the Begay test is in last fall's opinion in Hemingway. And it's certainly my mistake not to, frankly, have followed up with a 28-J letter on the Hemingway opinion. That's an opinion that came out, I believe, in October and which was written by Judge King for this Court. What Hemingway says quite clearly is that Sykes changes the landscape post-Begay. And if I could just quote from the language of Judge King's opinion, he says, In short, Sykes makes it clear that Begay did not substitute the purposeful, violent, and aggressive inquiry for the analysis of risk that is already unified in the residual clause. And so Judge King is saying, wait a second. For those of you who would like to sort of apply or repurpose this purposeful, violent, and aggressive test that's laid out in Begay to all manner of statutes, hang on a second. Begay is about a limited class of crimes that were not considered by the drafters of the ACCA and which are typically strict liability crimes or, in some cases, negligence crimes. And there's a world of difference between a DUI or an escape or a vehicular flight statute and a burglary statute. Begay specifically talks about instances or types of crimes that don't require knowing or intentional conduct. And the Maryland appeals courts have stated that you need to know what you're doing, that there's a general intent element to Maryland Fourth Degree Burglary. And so really, in addition to pointing your honor to Sykes, I would point your honor to Hemingway, which says Sykes is a change and you need to really just look at the quantum of risk. That's what we're talking about here. Is there a similar degree of risk associated with the crime that's before the court? Your honor, if I can return to the issue of degree of risk, it's the standard or the test that this court must apply. That standard is the ordinary case. This court is instructed not to look to outlying circumstances. These, of course, are outlying circumstances which exist only in hypotheticals. One sort of searches in vain through the Maryland reports for instances of Fourth Degree Burglary that are committed by vagrants or pranksters. This is really a residential burglary statute that lacks an intent element. I understand that it can be described as either nominated as either trespass or a lesser form of burglary. But this is just a crime that is designed to criminalize typical residential burglaries. There are no instances that one can find, at least in the Maryland reports, of instances of criminalization of this conduct that arise from something other than that. And as Judge Traxtor pointed out in one of his earlier questions, burglars are cowards, or if they're not cowards, they're individuals who are absolutely keen to avoid any type of confrontation. Everybody who breaks and enters a dwelling is presumably interested in saving their own skin. And so whether they're there to steal something or, in maybe some outlying instance there, simply to examine the interior of the home, they don't want to engage in a confrontation. They want to get out of there safe and sound. And therefore, there simply can't be any difference in risk associated with the Fourth Degree Burglary Statute as compared against a Taylor generic burglary, because in both cases, the individual who's committing the crime is seeking to avoid a confrontation. And it was earlier a question from this Court as to, or subject to discussion, as to whether that might be different in a situation in which, for example, there were a family member or a friend who was committing an unauthorized burglary or an unauthorized trespass. And, Your Honors, one of the things that I learned as a local prosecutor, that a huge majority of violent crimes are committed between people who already know each other. And that includes bar fights, it includes domestic violence cases, and it includes other forms of violent confrontations. And Your Honors heard before we stepped to the podium a very tragic civil suit involving an individual who was apparently living near the home of his ex-wife. And I can tell Your Honors that if that man were to have entered the home of his ex-wife and confronted her brother or her new boyfriend there, surely that would not have reduced the risk of confrontation. Anytime someone is unauthorized and they've broken and entered a dwelling, that risk, that sort of explosive, you know, volatile risk of a confrontation is present, regardless of their intent. And it's not just me who's making that argument. That's an argument that has been sustained by various courts. In addition to the Skipper opinion out of the Sixth Circuit, which deals with an Ohio trespass statute, there is a 2009 opinion from the Seventh Circuit, and that's United States v. Korner. That's an opinion which I did not cite in my brief, but which I will happily follow up with this court on by way of a 28-J letter. And in Korner, which was written by Judge Ripple, a Seventh Circuit judge, the court expressly looked at this issue of intent in the context of a Wisconsin criminal trespass statute. And that Wisconsin criminal trespass statute lacks the same element of intent that is missing with Maryland fourth-degree burglary. And what the court said in Korner is, quote, and this is 588 F. 3rd, 1130, 2009, Seventh Circuit. The court said, quote, the fact that the latter offense does not include an intent to steal or to commit a felony does not lessen the risk of such an encounter. So what we have is we have the Seventh Circuit in Korner, we have the Sixth Circuit in Skipper, and then we have the 2003 opinion from the Tenth Circuit in Venegas-Warnalas, I believe is the case. All three of those courts are saying the risk of an encounter does not hinge on intent. It hinges on the risk of a confrontation. And what opposing counsel would like this court to do is say, no, no, no, I want you to step away. I want you to step away from that prior precedent. I want you to step away from the core thread, the core message of the various opinions of the Supreme Court and courts of appeals that hinge on confrontation. I want you instead to turn your judgment on this issue of intent. And that would be taking this court out of step with all of those other courts. Opposing counsel would like to read Taylor in a way that, frankly, can't be sustained by the text of Taylor. What Taylor says, and now quoting the language, Taylor says, quote, the fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender, an occupant, caretaker, or some other person who comes to investigate. And the offender's own awareness of this possibility may mean that he is prepared to use violence if necessary to carry out his plans to escape. And this requires some degree of close reading, but what the second sentence there modifies, and by second sentence I'm referring to the phrase awareness of this possibility, what that phrase modifies is the dependent clause in the prior sentence, which is possibility of a violent confrontation. Not awareness of his or her intent to commit a crime, but awareness of the possibility of a violent confrontation. So this is touchstone language in Taylor, and it's language that has subsequently been buttressed, supported, built on by the various courts of appeals, including in 1993 this court, in its opinion in Custis, specifically referenced the possibility of a confrontation as being the key aspect of a Maryland first-degree burglary. Well, that language you read, and I get your point about the possibility of confrontation notwithstanding the lack of intent, but the Supreme Court did mention the intent to commit a crime, which we don't have here in the statute. And then I think the language you read suggests that it was the burglars who were the intent on a confrontation, and you suggested earlier that burglars want to avoid confrontation. So it's a little bit inconsistent, don't you think? I disagree, and what Taylor, a fair reading of that language in Taylor suggests to me, is that it's a burglar's awareness of the possibility of a violent confrontation. And what Taylor does not suggest is that the burglar is seeking that confrontation out. Taylor is just merely making the logical point that a burglar knows that he might come to blows with the occupant. And I suppose it really doesn't matter, it's just the general potential for confrontation that's the concern here, right? That's right. And this thread, it continues all the way, in fact, through Carthorne, a case that opposing counsel mentioned, and which was written by Judge Keenan. In Carthorne, Judge Keenan specifically writes, quote, Based on these considerations, we conclude that the crime of ABPO, assault and battery on a police officer in Virginia, does not present the serious potential risk of physical injury as that presented, for example, in a confrontation between an occupant of a dwelling and a burglar attempting to break in. So Judge Keenan is specifically saying, hey, we're not at that level, and that level is benchmarked by a confrontation or potential confrontation between a burglar and an occupant. And so as recently as last October, when Carthorne came out, this court has again referenced that touchstone, possibility of a confrontation. And Judge O'Grady, as you had pointed out or made mention of in one of your questions for opposing counsel, you know, even though Maryland Fourth Degree burglary, it lacks this element of an intent to commit a crime therein. I mean, first of all, it's plain that in the ordinary case, such an intent will exist, because why would someone risk life and limb to get into somebody's home for the purpose of merely checking it out, right? That's a species of crime that I never encountered as a local prosecutor, and I certainly, one does not read about in the papers this notion of going into someone's house for just innocent or sort of humorous purposes. But even in the context of a statute that lacks that specific intent to commit a crime element, you still have this general intent. You know, you still have this element of stealth and deception, and that's what the Maryland courts have previously talked about when talking about what it means to break and enter. One must do so by stealth and deception. So you still have a degree of malicious intent that's inherent in breaking and entering a dwelling, irrespective of whether there's a required element of an additional intent to commit a crime or felony inside the dwelling. Judge Traxler, you had asked opposing counsel about Carthorne and mentioned the fact that assaults could be satisfied by minimal touching, and that's really important. You know, what Judge Keenan wrote in Carthorne is she said, what we're looking at with a typical assault and battery on a police officer is we're looking at typically a two-person encounter between an officer and an offender or an arrestee, whether they're an offender or not. And that's the classic assault and battery on a police officer encounter. And there, as to the offender, you have the possibility that he or she could satisfy the elements of assault and battery on a police officer by something as minimal as simply shoving them or spitting on them. Or pulling away when they try to cuff you. Or pulling away, and I confess an insufficient degree of familiarity with that statute to know exactly where that force line is drawn, but something along those lines, something minimal. And then in response, you have a police officer who's a trained law enforcement officer and whose M.O. as sort of determined or acquired by their department is to end that encounter in a way that is as minimally forceful as possible. Right, police officers are trained not to kind of go wild and increase the degree of force or degree of assault that's generated by an encounter just because a defendant or an offender gets in their face or pushes them or even engages in a more serious degree of assault. Police officers are trained to defuse encounters. And that was really what Judge Kenan was saying there, is that based on the fact that those are the two players in this type of encounter, many of those encounters may well resolve themselves with assaultive conduct or forceful conduct that doesn't meet that serious potential risk threshold. Well, burglary is an entirely different animal. I mean, here, what we're really talking about is the 2 a.m. test or the 3 a.m. test. You know, when somebody is lying in their bed, his bed or her bed, and hears the glass breaking downstairs in the living room, and then hears somebody come into their living room, is that an encounter that is likely to resolve itself through some sort of de minimis force? I mean, the newspapers are full of these tragic situations in which somebody is, you know, their car broke down on the side of the road in a rural area, and they walk up on somebody's porch and they knock on that person's door at 2 o'clock in the morning seeking help or seeking to use their phone, and that person thinks that they're breaking in and comes out with a shotgun. And, you know, that is the type of encounter that is made possible by any violation of Maryland Fourth Degree Burglary. I'm not saying that that's what happens in every instance, God forbid, but it is what happens in some instances. We're not dealing with a trained officer who's seeking to defuse a situation. We're dealing with a scared, violated, and in some cases enraged homeowner. And, Your Honors, unless I still have a few minutes left, but unless Your Honors have any other questions, I'll cede the balance of my time. Thank you. Mr. Patel. Thank you. Mr. Knutson. Your Honors, quickly, just a few points. United States Hemingway does nothing to say that the psychs or the big A purposeful, aggressive, and violent test is no longer relevant. What Hemingway said is that we don't have to discuss the purposeful, aggressive, and violent test here because, in that case, the prior offense didn't meet the comparative risk environment. So it was saying it doesn't substitute the purposeful, aggressive, and violent test. But what the case absolutely was saying, and what Carthorne said, Your Honors, that both are relevant. Now, if it happens to be the case that a prior offense doesn't present a risk of injury that's at a similar level of generic broker dwelling, then there's no need to go to the purposeful, violent, and aggressive test. And that's what Hemingway was saying. We don't need to go there because it doesn't qualify under the first prong. And so that's what Hemingway said. It did not diminish the purposeful, violent, and aggressive requirement that Carthorne, after psych, said is absolutely relevant. Now, the court, I'm sorry, proposing counsel also cites United States v. Korner. That's a very different type of provision. In that case, there was an element not just of trespass but provoking a breach of peace plus putting the victim in fear of bodily harm. So that's not the same case that we're talking about here. And also, Your Honor, I just wanted to remind the court that the government keeps talking about the ordinary case and even at one point said, oh, yeah, in the ordinary case, there's going to be this intent to rape, steal, and murder or commit some other crime. Well, if that was true, then the defendant would be charged under first-degree burglary. That's why we have first-degree burglary in Maryland, not trespass. Trespass, again, is meant for the least serious of the conduct. The other thing is it's important to remember it's the government's burden to prove what the ordinary case is. They just come up here speculating, saying, yeah, it's the typical case is a stranger who's going to break into a home. But they don't have anything to show that that is the typical case in Maryland. And I cited to two cases where it's not a stranger who's breaking into a home who's being charged with a trespass. There's two cases in Maryland, Your Honor, State v. Bain, and I cited to another one earlier too, Bass v. State, where there wasn't any violence that resulted because the individual knew the person, the occupant, the trespasser knew the occupant. Obviously, that presents a very different type of situation than what the government wants to make the typical case here, somebody breaking into a home in order to trespass. Somebody who breaks into a home in the middle of the night, trespass probably is there also to try to steal, rape, or murder or commit some other type of crime, and that's going to be encompassed under first-degree burglary, not misdemeanor trespass, which is reserved for the least serious offenses. So, Your Honor, if the Court doesn't have any other questions, then I'll rest. Thank you. Thank you, Mr. Patel.
judges: William B. Traxler, Jr., Albert Diaz, Liam O'Grady